IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| STERILUMEN, INC, | : |
| | : |
| Plaintiff, | : |
| | : |
| - against - | : |
| | : |
| AEROCLEAN TECHNOLOGIES, LLC and | : |
| AEROCLEAN TECHNOLOGIES, INC. | : |
| | : |
| Defendants. | : |

---

## COMPLAINT

Plaintiff SteriLumen, Inc. ("Sterilumen" or "Plaintiff"), by and through its undersigned attorneys, for its Complaint against defendant Aeroclean Technologies, LLC ("ATLLC") and Aeroclean Technologies, Inc. ("ATINC" or ATLLC and ATINC collectively, "Defendant"), alleges as follows:

### NATURE OF THE ACTION

1.  In this action, Sterilumen seeks injunctive relief, lost profits, damages and attorneys' fees for Defendant's acts of willful trademark infringement, false designation of origin, false descriptions, and unfair competition, pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq., and trademark infringement and unfair competition, and related causes under the common law and statutes of the State of New York.

1

2. Sterilumen is the owner of a family of "AIRO" trademarks, including without limitation, AIROCLEAN®, AIROCLEAN420, AIROCIDE, AIROCIDE HD®, AIROPRO®, and SCIENTIFIC AIR, all for use in connection with air purification products. After Sterilumen started using its AIRO marks, Defendant adopted and began to use the AEROCLEAN mark in connection with its own air purification products, thereby infringing Sterilumen's valuable trademark rights, unfairly competing with Sterilumen, and damaging Sterilumen. On its website and elsewhere, Defendant claims trademark rights in the AEROCLEAN mark by using the TM (trademark) designation with the infringing AEROCLEAN mark.

3. Sterilumen is additionally the owner of a federal trademark registration for the STERILUMEN® trademark, which is most commonly presented as "SteriLumen." After Sterilumen started using it STERILUMEN® mark, Defendant adopted and began to use the STERIDUCT mark, most commonly presented as "SteriDuct" in connection with its own air purification products, thereby infringing Sterilumen's valuable trademark rights, unfairly competing with Sterilumen, and damaging Sterilumen. On its website and elsewhere, Defendant claims trademark rights in the SteriDuct mark by using the TM (trademark) designation with the infringing STERIDUCT mark.

**THE PARTIES**

4. Sterilumen is a corporation organized and existing under the laws of the State of New York, having its principal place of business in Mount Vernon, Westchester County, New York.

5. Upon information and belief, defendant ATLLC is a limited liability company organized under the laws of the State of Delaware, having a principal place of business in Palm Beach Gardens, Florida.

6. Upon information and belief, defendant ATINC is a corporation organized under the laws of the State of Delaware, having a principal place of business in Palm Beach Gardens, Florida.

7. Defendant ATLLC was originally formed as Cleanco Bioscience Group LLC, a limited liability company in Florida, in September 2011 and effected a name change to AeroClean Technologies, LLC and conversion to a Delaware limited liability company in September 2020. Defendant's original name – Cleanco Bioscience Group – does not infringe any of Sterilumen's trademark right, but the newly adopted "AeroClean" mark does infringe.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over the claims asserted in this Complaint pursuant to theLanham Act (15 U.S.C. § 1121) and 28 U.S.C. §§ 1331, 1332, 1338(a) and (b), and 1355. This Court has supplemental jurisdiction over Sterilumen's state claims pursuant to 28 U.S.C. § 1367 because they are so related to Sterilumen's federal claims that they form part of the same case or controversy.

9. This Court has personal jurisdiction over Defendant pursuant to N.Y. Civil Practice Law and Rules §§ 302(1), (2) and (3).

10. Defendant transacts business within the state and/or contract to supply goods or services in the state. Without limitation, by press release dated February 16, 2022, Defendant stated: "Today, AeroClean Technologies ("AeroClean") (Nasdaq: AERC) announced Hospital for Special Surgery ("HSS") **in New York** will install Pūrgo™ air purification and sanitization devices in their facilities starting in early 2022. See Defendant's website, https://investors.aeroclean.com/news-releases/news-release-details/aeroclean-technologies-air-purification-system-be-installed (emphasis added). The claims asserted herein involve these goods as advertised, offered for sale and sold in New York.

11. Defendant has committed the tortious acts of trademark infringement and unfair competition in the state of New York, by advertising, promoting, offering for sale and selling its products using the infringing trademarks in New York.

12. Defendant has committed the tortious acts of trademark infringement and unfair competition outside the state of New York, by advertising, promoting, offering for sale and selling its products using the infringing trademarks outside of New York and causing injury to Sterilumen in New York, all resulting from Defendant regularly doing and soliciting business in New York and otherwise engaging in a persistent course of conduct and deriving substantial revenue from the sale of the infringing goods in New York.

13. Based on Defendant's course of conduct, including without limitation, the solicitation of sales and the actual sales of infringing goods in New York, Defendant expects or should reasonably expect its acts to have consequences in New York and Defendant derives substantial revenue from interstate or international commerce.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because Sterilumen is headquartered in New York, a substantial part of the events giving rise to the claims occurred in this district, and Defendant is subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

15. Sterilumen is in the business of researching, developing, offering for sale and selling, among other products, air purification products and systems ("Plaintiff's Products").

16. More specifically, Plaintiff's Products include:

> Photocatalytic oxidation technology that completely destroys airborne viruses including COVID and other pathogens, using among other elements, ultraviolet light. Certain of the products incorporating this technology are listed as a

    Class II Medical Device by the U.S. Federal Food and Drug Administration and have been deployed by NASA to disinfect the International Space Station. These systems are also used in medical and dental facilities, in large event and public venues, such as Fenway Park and JetBlue Park (home of the Red Sox's minor league affiliate in Florida) and the Palace of Versailles in France, food processing and storage facilities, including those operated by Whole Foods and Del Monte, in wine and beverage facilities, including those operated by Woodbridge by Robert Mondavi, Beaulieu Vineyard (BV), Ste. Michelle, and Joel Gott, and a variety of other locations including schools, homes, corporate offices, and government buildings;

    The same photocatalytic oxidation technology is used in the agriculture and cannabis industries to eliminate mold, mildew, and other contaminates from the air in indoor grow facilities;

    And patented, three stage technology comprising HEPA filtration, an ultraviolet germicidal light chamber that traps and destroys microscopic pathogens, and an active carbon substrate for germ and odor removal. This technology is designed for and is in current use in the healthcare industry, including hospitals (including intensive care units, operating rooms, emergency rooms, and patient rooms) such as NYU Langone Medical Center and NYC Health + Hospitals and Baptist Health South Florida, long term and assisted care facilities, and dental facilities and offices, as well as other commercial settings.

17. In connection with Plaintiff's Products, Plaintiff has adopted and uses a family of "AIRO" marks, including without limitation, AIROCLEAN®, AIROCLEAN420, AIROCIDE, AIROCIDE HD®, AIROPRO®, and SCIENTIFIC AIR (collectively, the "AIRO Marks").

18. Plaintiff is the owner of U.S. Trademark Registration No. 5,198,137, for the AIROCLEAN® trademark. The AIROCLEAN® trademark was registered on May 9, 2017, based on a date of first use of the mark in commerce in September of 2015.

19. Plaintiff, by and through its predecessors in interest and/or though its "related" entities (as the term is defined in the Lanham Act), has used the mark openly and notoriously since the date of first use, and such mark is in current use.

20. Plaintiff is the owner of U.S. Trademark Registration No. 6,255,443, for the AIROCIDE HD® trademark. The AIROCIDE HD® trademark was registered on January 26, 2021, based on a date of first use in April of 2020.

21. Plaintiff, by and through its predecessors in interest and/or through its "related" entities (as the term is defined in the Lanham Act), has used the mark openly and notoriously since the date of first use, and such mark is in current use.

22. Plaintiff is the owner of U.S. Trademark Registration No. 6,255,442, for the AIROPRO® trademark. The AIROPRO® trademark was registered on January 26, 2021, based on a date of first use in March of 2020.

23. Plaintiff, by and through its predecessors in interest and/or through its "related" entities (as the term is defined in the Lanham Act), has used the mark openly and notoriously since the date of first use, and such mark is in current use.

24. In connection with all of Plaintiff's Products, Plaintiff additionally uses it STERILUMEN® mark.

25. Plaintiff is the owner of U.S. Trademark Registration No. 5,927,517, for the STERILUMEN® trademark. The STERILUMEN® trademark was registered on December 3, 2019, based on a date of first use February 4, 2019.

26. Plaintiff's AIROCLEAN®, AIROCIDE HD®, AIROPRO®, and STERILUMEN® trademarks are collectively referred to as the "Registered Marks" and the registrations therefore are collectively referred to as the "Registrations."

27. The Registrations are all currently valid and existing.

28. Though the current records of the U.S. patent and Trademark Office may not reflect that Plaintiff is the current owner of the Registrations, all of the Registrations and all of the Registered Marks have been assigned to Plaintiff.

29. Plaintiff is the owner of all rights in and to the AIROCLEAN420 trademark for use on or in connection with Plaintiff's Products.

30. Plaintiff first adopted and used the AIROCLEAN420 trademark in commerce on or about 2014.

31. Plaintiff has used the AIROCLEAN420 mark openly and notoriously since its date of first use, and such mark is in current use.

32. Plaintiff is the owner of all rights in and to the AIROCIDE trademark for use on or in connection with Plaintiff's Products.

33. Plaintiff first adopted and used the AIROCIDE trademark in commerce on or about 2003.

34. Plaintiff has used the AIROCIDE mark openly and notoriously since its date of first use, and such mark is in current use.

35. Plaintiff is the owner of all rights in and to the SCIENTIFIC AIR trademark for use on or in connection with Plaintiff's Products.

36. Plaintiff first adopted and used the SCIENTIFIC AIR trademark in commerce on or about 2019.

37. Plaintiff has used the SCIENTIFIC AIR mark openly and notoriously since its date of first use, and such mark is in current use.

38. Plaintiff's AIROCLEAN420, AIROCIDE, and SCIENTIFIC AIR trademarks are collectively referred to as the "Common Law Marks." The Registered Marks and the Common Law Marks are collectively referred to as "Plaintiff's Marks").

39. Upon information and belief, Defendant ATLLC was originally formed as Cleanco Bioscience Group LLC, a limited liability company in Florida, in September 2011 and effected a name change to AeroClean Technologies, LLC and conversion to a Delaware limited liability company in September 2020.

40. Plaintiff did not object to Defendant's past use of the Cleanco Bioscience Group trade name or trademark, and Plaintiff would not object to such use in the future.

41. Upon information and belief, Defendant first adopted and used the AEROCLEAN trade name and trademark (the "Infringing AERO Mark") in September of 2020, after Plaintiff first adopted and used each of Plaintiff's Marks.

42. The Infringing AERO Mark is confusingly and deceptively similar to each and every of Plaintiff's Marks (other than the STERILUMEN mark).

43. In addition to its Infringing AERO Mark, Defendant uses the SteriDuct mark (the "Infringing Steri Mark") to identify its technology, and Defendant advertises, offers for sale and sells products using the SteriDuct mark.

44. Defendant's Infringing Steri Mark is confusingly and deceptively similar to Plaintiff's SteriLumen mark.

45. The Infringing AERO Mark and the Infringing Steri mark shall collectively be referred to as "Defendant's Infringing Marks."

46. Defendant advertises, offers for sale and sells air purification products (the "Infringing Products").

47. Defendant uses its Infringing Marks on and in connection with all of its Infringing Products.

48. Just like Plaintiff's Products, Defendant's Infringing Products do not rely merely on filtration. Rather, just like certain of Plaintiff's Products, certain of Defendant's Infringing Products use a combination of HEPA filtration, carbon filtration, and ultraviolet light.

49. Just like Plaintiff's Products, Defendant's Infringing Products can kill viruses, such as COVID-19.

50. Just like certain of Plaintiff's Products, certain of Defendant's Infringing Products are designed specifically for use in the health care industry, including hospitals and long-term care facilities.

51. Just like certain of Plaintiff's Products, certain of Defendant's Infringing Products have been sold to and are currently in use by hospitals, including hospitals in New York and Florida.

52. Just like certain of Plaintiff's Products that are listed as Class II Medical Devices by the U.S. Federal Food and Drug Administration ("FDA"), Defendant is seeking (and may have obtained) the same FDA Class II listing for its Infringing Products.

53. Just like Plaintiff's Products, Defendant's Infringing Products have application well beyond the health care industry.

54. Without the authorization or consent of Plaintiff, and after Plaintiff built up extensive and valuable business and goodwill in connection with Plaintiff's Marks as used on and in connection with Plaintiff's Products, Defendant commenced the use of the Infringing Marks in connection with its Infringing Products.

55. Plaintiff and Defendant are engaged in the business of providing the same and/or similar products, to the same and/or similar class of customers, through the same and/or or similar channels of trade.

56. The aforementioned acts of Defendant have caused and will continue to cause actual confusion and a likelihood of confusion in the minds of the trade and the public, and will damage Plaintiff's reputation in connection with its Trademark.

57. According to Defendant itself, as alleged in its Form S-1 Registration Statement filed with the U.S. Securities and Exchange Commission and elsewhere, the market for the products at issue exceeds $20 Billion.

58. The aforementioned acts of Defendant have caused and will continue to cause actual confusion and a likelihood of confusion in the minds of the trade and the public, and upon information and belief, such confusion has resulted and will result in lost sales, lost opportunities, lost market share, and price erosion, with the resulting damage to Plaintiff potentially reaching $20 Billion in lost opportunity.

## COUNT I
## REGISTERED TRADEMARK INFRINGEMENT (LANHAM ACT § 32)

59. Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

60. Plaintiff is the owner of the Registered Marks and the Registrations.

61. By virtue of Defendant's conduct, Defendant has used and continue to use spurious marks in commerce, namely Defendant's Infringing Marks. Defendant's Infringing Marks are identified with Plaintiff's Registered Marks and Registrations.

62. Defendant's conduct is willful, malicious and wanton and Defendant will continue its acts of willful infringement unless enjoined by this Court.

63. Plaintiff's Products are products that are advertised, offered for sale and sold to the same or similar classes of purchasers as Defendant's Infringing Products..

64. As a result of Defendant's conduct, there exists a strong likelihood of confusion, mistake, or deception, and many persons familiar with Plaintiff's Registered Marks, its reputation and favorable goodwill, are likely to purchase Defendant's Infringing Products in the mistaken belief that the Infringing Products are sold by, or otherwise authorized or affiliated with, Plaintiff.

65. By virtue of Defendant's conduct, Defendant is engaged in the infringement of Plaintiff's Registered Marks, in violation the Lanham Act § 32, 15 U.S.C.§ 1114(1), by using marks wherein such use is likely to cause confusion, or to cause mistake or to deceive.

66. Defendant intends to make unlawful gains and profits from such unlawful infringement and, by reason thereof, Plaintiff will be deprived of rights, profits and opportunities which otherwise would have come to Plaintiff but for such infringements.

67. Plaintiff has no adequate remedy at law for the injury alleged in this Count. The injury is intangible in nature and not capable of being fully measured or valued in terms of money damages. Further, the injury is of a continuing nature and will continue to be suffered so long as Defendant continues its wrongful conduct.

68. Notwithstanding the inadequacy of and the difficulty of presently fully ascertaining Plaintiff's monetary damages caused by Defendant's wrongful conduct, Plaintiff is informed and believes and, based upon such information and belief, alleges that said conduct has resulted in irreparable, direct and proximate damages to Plaintiff. Plaintiff seeks leave of

this Court to amend its complaint to allege the full nature and extent of said monetary damages, if and when, and to the extent the damages are ascertained.

## COUNT II
### FEDERAL TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTION, AND UNFAIR COMPETITION BASED ON THE REGISTERED MARKS (LANHAM ACT § 43(a)

69. Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

70. The claims of Count II are asserted in addition to and/or in the alternative to the claims of Count I, in the event of a technical or other defect that may affect the validity of one or more of the Registered Trademarks and/or Registrations.

71. Plaintiff is the owner of the Registered Marks and the Registrations.

72. By virtue of Defendant's conduct, Defendant has used and continue to use spurious marks in commerce, namely Defendant's Infringing Marks. Defendant's Infringing Marks are identified with Plaintiff's Registered Marks and Registrations.

73. Defendant's conduct is willful, malicious and wanton and Defendant will continue its acts of willful infringement unless enjoined by this Court.

74. Plaintiff's Products are products that are advertised, offered for sale and sold to the same or similar classes of purchasers as Defendant's Infringing Products..

75. As a result of Defendant's conduct, there exists a strong likelihood of confusion, mistake, or deception, and many persons familiar with Plaintiff's Registered Marks, its reputation and favorable goodwill, are likely to purchase Defendant's Infringing Products in the mistaken belief that the Infringing Products are sold by, or otherwise authorized or affiliated with, Plaintiff.

76. By virtue of Defendant's conduct, Defendant is engaged in the infringement of Plaintiff's Registered Marks, in violation the Lanham Act § 43(a), 15 U.S.C.§ 1125(a), by using marks wherein such use is likely to cause confusion, or to cause mistake or to deceive.

77. Defendant intends to make unlawful gains and profits from such unlawful infringement and, by reason thereof, Plaintiff will be deprived of rights, profits and opportunities which otherwise would have come to Plaintiff but for such infringements.

78. Plaintiff has no adequate remedy at law for the injury alleged in this Count. The injury is intangible in nature and not capable of being fully measured or valued in terms of money damages. Further, the injury is of a continuing nature and will continue to be suffered so long as Defendant continues its wrongful conduct.

79. Notwithstanding the inadequacy of and the difficulty of presently fully ascertaining Plaintiff's monetary damages caused by Defendant's wrongful conduct, Plaintiff is informed and believes and, based upon such information and belief, alleges that said conduct has resulted in irreparable, direct and proximate damages to Plaintiff. Plaintiff seeks leave of this Court to amend its complaint to allege the full nature and extent of said monetary damages, if and when, and to the extent the damages are ascertained.

### COUNT III
### FEDERAL TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTION, AND UNFAIR COMPETITION
### BASED ON THE COMMON LAW MARKS (LANHAM ACT § 43(a)

80. Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

81. Plaintiff is the owner of the Common Law Marks.

82. The Common Law Marks are inherently distinctive, and they have an acquired distinctiveness (or secondary meaning) based on their use in commerce, advertising and public recognition.

83. By virtue of Defendant's conduct, Defendant has used and continues to use spurious marks in commerce, namely Defendant's Infringing Marks. Defendant's Infringing Marks are identified with Plaintiff's Common Law Marks.

84. Defendant's conduct is willful, malicious and wanton and Defendant will continue its acts of willful infringement unless enjoined by this Court.

85. Plaintiff's Products are products that are advertised, offered for sale and sold to the same or similar classes of purchasers as Defendant's Infringing Products.

86. As a result of Defendant's conduct, there exists a strong likelihood of confusion, mistake, or deception, and many persons familiar with Plaintiff's Common Law Marks, its reputation and favorable goodwill, are likely to purchase Defendant's Infringing Products in the mistaken belief that the Infringing Products are sold by, or otherwise authorized or affiliated with, Plaintiff.

87. By virtue of Defendant's conduct, Defendant is engaged in the infringement of Plaintiff's Common Law Marks, in violation the Lanham Act § 43(a), 15 U.S.C.§ 1125(a), by using marks wherein such use is likely to cause confusion, or to cause mistake or to deceive.

88. Defendant intends to make unlawful gains and profits from such unlawful infringement and, by reason thereof, Plaintiff will be deprived of rights, profits and opportunities which otherwise would have come to Plaintiff but for such infringements.

89. Plaintiff has no adequate remedy at law for the injury alleged in this Count. The injury is intangible in nature and not capable of being fully measured or valued in terms of money

damages. Further, the injury is of a continuing nature and will continue to be suffered so long as Defendant continues its wrongful conduct.

90. Notwithstanding the inadequacy of and the difficulty of presently fully ascertaining Plaintiff's monetary damages caused by Defendant's wrongful conduct, Plaintiff is informed and believes and, based upon such information and belief, alleges that said conduct has resulted in irreparable, direct and proximate damages to Plaintiff. Plaintiff seeks leave of this Court to amend its complaint to allege the full nature and extent of said monetary damages, if and when, and to the extent the damages are ascertained.

## COUNT IV
## LIKELIHOOD OF INJURY TO BUSINESS REPUTATION OR DILUTION
## (NY Gen. Bus. Law § 360-l)

91. Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

92. The forgoing acts of Defendant have created and will create a likelihood of injury to the public image and business reputation of Plaintiff.

93. The forgoing acts of Defendant have created and will create a likelihood of dilution of Plaintiff's Marks.

94. Plaintiff's Marks are extremely strong, inherently strong and distinctive, and have acquired distinctiveness and a secondary meaning.

95. Defendant appropriated Plaintiff's Marks by using the Infringing Marks, which are confusingly and substantially similar to Plaintiff's Marks.

96. The forgoing acts of Defendant will create a likelihood of dilution by blurring, in that Defendant's use of its Infringing Marks will cause Plaintiff's Marks to lose their ability to serve as a unique identifier of Plaintiff's Products.

97. Based on the foregoing, Defendant has violated New York Gen. Bus. Law § 360-l, for which Plaintiff is entitled to injunctive relief.

## COUNT V
## USE OF NAME WITH INTENT TO DECEIVE
## (NY Gen. Bus. Law § 133)

98. Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

99. Defendant used and is using the Infringing Marks in commerce

100. Defendant was aware of Plaintiff and Plaintiff's use of Plaintiff's Marks prior to the time Defendant selected and commenced using the Infringing Marks.

101. Defendant adopted and used the Infringing Marks with the intent of causing confusion among consumers with the purpose of benefitting from Plaintiff's reputation and goodwill.

102. Defendant used the Infringing Marks in bad faith.

103. Defendant used the Infringing Marks with the intent to cause confusion and to deceive the public.

104. Defendant's use of the Infringing Marks has created the likelihood of confusion and actual confusion.

105. The foregoing acts of Defendant constitute a violation of New York Gen. Bus. Law. § 133, for which Plaintiff is entitled to injunctive relief.

## COUNT V
## COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION

106. Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

107. The acts of Defendant complained of herein were committed willfully, intentionally, and with bad faith.

108. Defendant intentionally appropriated Plaintiff's Marks with the intent of causing confusion, mistake and deception as to the source of its Infringing Marks and the goods provided thereunder, with the intent to palm-off its Infringing Marks and Infringing Goods as those of Plaintiff and to misappropriate the efforts and good will of Plaintiff.

109. The acts of Defendant have created a likelihood of confusion.

110. The acts of Defendant, including Defendant's use of the Infringing Marks, constitute trademark infringement, in violation of the common law of the State of New York.

111. The acts of Defendant, including Defendant's use of the Infringing Marks, constitute unfair competition, in violation of the common law of the State of New York.

112. The foregoing acts of Defendant have injured and will continue to injure Plaintiff, by depriving it of sales of its genuine goods, by injuring its business reputation, and by passing off Defendant's Infringing Marks and Infringing Goods as Plaintiff's Marks and Plaintiff's Goods, all in violation of the common law of the State of New York.

113. Defendant's acts have caused irreparable harm and damage to Plaintiff and have caused Plaintiff monetary damage in an amount thus far not determined, for which Plaintiff is entitled to its actual damages, Defendant's profits, punitive damages, attorney' fees and costs.

114. Plaintiff has no adequate remedy at law.

**PRAYER OF RELIEF**

Wherefore, SteriLumen respectfully requests that the Court enter judgment in its favor and against Defendant on its claims as follows:

A.  That Defendant's conduct serves to infringe Plaintiff's Registered Marks, in violation of Lanham Act § 32, 15 U.S.C. § 1114.

B.  That Defendant's conduct serves to infringe Plaintiff's Marks, falsely designate the origin of Defendant's Infringing Products, falsely describe such products, and unfairly compete with Plaintiff, all in violation of Lanham Act §43(a), 15 U.S.C. §1125(a).

C.  That Defendant's conduct will create a likelihood of dilution and injury to Plaintiff's business reputation in violation of New York Gen. Bus. Law § 360-l.

D.  That Defendant's used the Infringing Marks with the intent to cause confusion and to deceive the public in violation of New York Gen. Bus. Law § 133.

E.  That Defendant's conduct serves to infringe Plaintiff's Marks and unfairly compete with Plaintiff in violation of the common law of the State of New York.

F.  That Defendant has injured Plaintiff by depriving it of sales of its genuine goods, by injuring its business reputation, and by passing off Defendant's Infringing Products and Infringing Marks as Plaintiff's genuine Products and Marks, all in violation of the common law of the State of New York.

G.  That Defendant and its agents, officers, members, directors, shareholders, servants, employees, attorneys, their successors and assigns, and all others in active concert or participation with Defendant be preliminarily and permanently enjoined from directly or indirectly:

    a.  Using all or any of Plaintiff's Marks, or any other marks which are similar to or are colorable imitations of Plaintiff's Marks, alone or as a part of, or

|   |   |   |
|---|---|---|
|   |   | together with, any other designs, word or words, trademark, service mark, trade name, trade dress or other business or commercial designation or any logo, symbol or design; |
|   | b. | Committing any act which, in and of itself, or from the manner or under the circumstances in which it is done amounts to false designation of origin, false description or false representation of Defendant's products; and |
|   | c. | Otherwise unfairly competing with Plaintiff or committing dilution or infringement of Plaintiff's rights. |
| H. | That the Court issue an Order directing Defendant to file with the Court and serve on Plaintiff, within thirty (30) days after the service on Defendant of such injunctions, a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction. |
| I. | That the Court award judgment in favor of Plaintiff for the damages sustained by Plaintiff and the profits made by Defendant as a result of Defendant's wrongful conduct, in the amount of $20,000,000 or such other amount to be determined. |
| J. | That the Court award judgment in favor of Plaintiff in the amount of treble damages. |
| K. | That the Court award judgment against Defendant for the full costs of this action, including reasonable attorneys' fees. |
| L. | That the Court award to Plaintiff punitive damages sufficient to deter Defendant from committing such willful acts of infringement in the future. |
| M. | That this Court require a full and complete accounting of all monies received by Defendant as a result of the sales under the Infringing Marks. |
| N. | For interest on all amounts found to be due to Plaintiff from Defendant, at the prevailing rate, from the date said amounts or any part thereof became or become due. |

O.     That the Court require Defendant to notify his commercial associates, suppliers and customers of said Order and injunction.

P.     That the Court order such other, further and different relief as the nature of this action may require and that the Court may deem just and proper.

Q.     That the Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court, at any time, for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

## JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury on all claims and issues so triable.

Dated: August 11, 2022
       Scarsdale, New York

Respectfully submitted,

**NOLTE LACKENBACH SIEGEL**

By:    /s/ Robert Golden
       Robert B. Golden (6157)
       One Chase Road
       Scarsdale, New York 10583
       Phone (914) 723-4300
       Fax (914) 723-4301
       RGolden@NLS.law